IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NANCY CORTES,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 12-1389 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Nancy Cortés (hereafter plaintiff "Cortés") filed this action for judicial review of the final decision of defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying her application for a protected period of disability beginning on March 16, 2007 and the corresponding disability benefits. (Docket No. 1).[1]

On November 17, 2012, plaintiff Cortés, through Atty. Salvador Medina De La Cruz, filed an Informative Motion regarding consent to proceed before the Magistrate Judge. (Docket No. 7).[2] Atty. Medina De La Cruz thereafter filed plaintiff's memorandum of law on March 4, 2013. (Docket No. 17). On April 8, 2013, the Commissioner filed his memorandum. (Docket No. 20).

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"... [t]he court shall have power to enter, upon the pleadings and transcript
 of the record, a judgment without remanding the cause for rehearing." Section 205(g).

[2] The government has provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28, United States Code, Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

# BACKGROUND

Plaintiff Cortés filed an application for disability benefits with onset date of disability of March 16, 2007 due to meniscus tear, herniated nucleus pulposus at L-4/L-6 anc C5-C6, cervical myositis, carpal tunnel syndrome and major depressive disorder. After the application was initially denied, the requested administrative hearing was held but plaintiff Cortés waived being present. The Administrative Law Judge Hon. Glen G. Meyer's (hereafter "ALJ") received testimony from a vocational expert and plaintiff's legal representative was able to submit his hypothesis and questions to the vocational expert. Thereafter, the ALJ determined plaintiff Cortés was not disabled finding that, although she was considered unable to perform her previous work, there were other jobs available in the national economy she could perform as testified by the vocational expert. However, plaintiff was found disabled as of May 1, 2009, for her insured period entailed such date and up to December 31, 2012. The Appeals Council denied the request for review becoming the denial of disability from onset date through April 30, 2009 the final decision as to which judicial review is requested through this action.

Plaintiff Cortés argues the ALJ's decision that plaintiff was not under disability from March 16, 2007 through April 30, 2009 was in error. Plaintiff Cortés alleges the ALJ failed to present the vocational expert with the necessary information to accurately state his opinion as to the existence of jobs that plaintiff Cortés could perform within the residual functional capacity assessment. In particular, plaintiff submits the vocational expert did not consider an individual limited in the use of his/her hands for repetitive movements and specific movements to grab and fine manipulation for such hypothesis was not submitted

by the ALJ. Thus, in testifying as to jobs available as addresser and document preparer for an individual such as plaintiff Cortés who could perform sedentary work, simple and repetitive tasks and no contact with the public but occasional contact with supervisors and co-workers, the vocational expert's testimony should not be considered substantial evidence in support of the ALJ's decision. The jobs proposed by the vocational expert as alternate work of addresser and document preparer were precisely occupations that required the frequent use of hands for handling and fingering. In fact, the vocational expert in answering plaintiff's legal representative's additional question, clarified that if such hand and movement limitations were present, plaintiff Cortés could not perform the jobs above indicated. (Docket No. 17, Plaintiff's memo, pp. 4-5, 17).

      The Commissioner's memorandum of law objects to plaintiff's argument as to the ALJ having erred in submitting the hypothetical questions to the vocational expert. The Commissioner argues the ALJ's decision showed that the hypothetical questions were supported by one state agency medical consultant, Dr. Carmen N. Lebrón, insofar as the ability to handle, finger and fell due to joint tenderness, but the opinion of another physician, Dr. Jorge L. Méndez, was given greater weight as consistent with the residual functional findings proposed by the ALJ to the vocational expert. (Docket No. 20, pp. 20-21). The Commissioner thereafter summarizes the medical evidence of record which served as ground for the necessary substantial evidence in support of the ALJ's findings and decision of no disability. (*Id.*, pp. 3-14).

Opinion and Order
Civil No. 12-1380 (CVR)
Page No. 4

## THE ALJ'S DECISION AND THE APPEALS COUNCIL

Plaintiff Cortés applied for a period of disability through December 31, 2012. However, the application at issue referred to onset date of disability of March 16, 2007 through April 30, 2009, the protected period covered by the ALJ's determination as to which disability was denied.

At the requested administrative hearing, plaintiff Cortés waived her appearance and was represented by counsel. A vocational expert's testimony was entertained.

In applying in the administrative process the evaluation mandated by law, the ALJ concluded that plaintiff Cortés: (1) met the non-disability requirements for a period of disability and disability insurance benefits and is insured for benefits through December 31, 2012 and had not engaged in substantial gainful activity since the alleged onset date of disability of March 16, 2007; (2) plaintiff had severe impairments as per since alleged onset date of disability due to status/post meniscal tear right knee surgery, cervical myositis, degenerative discogenic disease and cervical herniation, bilateral carpal tunnel syndrome, venous insufficiency and moderate depressive disorder; and (3) plaintiff did not have an impairment or combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to said date, the ALJ considered the conditions only moderately affected plaintiff's physical and mental capacities but were severe enough to preclude a work routine. Thus, from the alleged onset date of disability of March 16, 2007 plaintiff Cortés was considered not to have an impairment or combination thereof that equal or meet the

listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Docket No. 5, Transcript, pp. 20-21).

As to the mental impairment alleged, plaintiff Cortés only sought limited treatment from June 13, 2007 through June 16, 2008, which was consistent with mild deficiencies in cognitive functioning. (*Id.*, p. 22). Thus, prior to May 1, 2009, the ALJ determined plaintiff Cortés retained the residual functional capacity for the full range of sedentary unskilled work. As such, upon consideration of the entire record, plaintiff Cortés was considered prior to April 30, 2009 able to perform jobs as testified by the vocational expert of addresser and document preparer, which existed in significant numbers in the national economy . (*Id.*, p. 31).

The ALJ issued the administrative opinion finding plaintiff Cortés not under disability from onset date of March 16, 2007 through April 30, 2009. Thereafter, as of May 1, 2009, plaintiff Cortés developed additional limitations which eroded her unskilled and sedentary occupational base and no jobs could be identified with such residual functional capacity, for which reason she was considered under disability as of said date. (*Id.*, p. 31). The Appeals Council affirmed the ALJ's findings and opinion. Thus, plaintiff Cortés has filed the instant claim for judicial review as to that portion of the administrative decision which failed to consider she was disabled from onset date through April 30, 2009.

## LEGAL ANALYSIS

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings

Nancy Cortés v. Commissioner of S.S.
Opinion and Order
Civil No. 12-1380 (CVR)
Page No. 6

of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he/she is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482

U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be

entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f).

The ALJ in the instant case examined and analyzed plaintiff Cortés' application following the relevant steps above described, and then at step five determined there were jobs available, as testified by the vocational expert, within her residual functional capacity for unskilled sedentary type of work from onset date of March 16, 2007 through April 30, 2009. Thereafter, no jobs were identified and Cortés was considered disabled from May 1, 2009 forward for she was insured for disability purposes up to December 31, 2012.

The claimant has the burden under steps one through four of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).

Plaintiff's memorandum of law objects to the ALJ's hypothetical questions to the vocational expert in not saying anything regarding manipulative limitations after having validated in the opinion the state agency's report of September 27, 2008 that Cortés had limited ability in handling and fingering and, as a consequence, had to avoid repetitive and sustained use of her hands. With said omissions, the vocational expert's testimony as to proposed alternate work such as addresser and document preparer, failed to consider that these jobs required frequent use of the hands for handling and fingering. (Docket No. 17, Plaintiff's memo., pp. 2-3). Because of these omissions, plaintiff Cortés submits there was no accurate demonstration of alternate work, for once the Commissioner's burden at step five ensues the correct legal standard would not allow the vocational expert's testimony be considered as substantial evidence in support of the ALJ's decision. (*Id.*, p. 3).

The Court of Appeals for the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than to testimony and reports of other medical experts in determining whether a claimant is disabled. Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988). That more weight is given to those reports of non-primary treating physician is not an error of the ALJ. *See* Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).

Once at the fifth step, it is for the Commissioner to establish the existence of other jobs that exist within a claimant's residual functional capacity. For once plaintiff is found he/she cannot return to his/her previous work, the burden shifts to the Commissioner to

Nancy Cortés v. Commissioner of S.S.
Opinion and Order
Civil No. 12-1380 (CVR)
Page No. 10

prove the existence of other jobs in the national economy that could be performed. 20 C.F.R. §404.1520(f) and (g).[3]

The ALJ's opinion, in considering the medical evidence, stated that prior to May 1, 2009 the longitudinal review of the record showed Cortés had mild to moderate physical and mental impairments that did not deteriorate to the point that she could not engage in sustained work routine. (Docket No. 5, Transcript, p. 20). According to the ALJ's opinion, treating and consultative sources did not report muscle atrophy, sensory or reflex abnormalities which significantly affected the extremities. There was no record of emergency room services or psychiatric hospitalizations for a mental condition. She sought psychiatric treatment for June 13, 2007 in seven medical appointments through June 16, 2008 with Dr. José Zamora, a psychiatrist. The diagnosis was of major depression single episode with anxiety. A consultative psychiatrist diagnosed major depressive disorder, moderate. (*Id.*, pp. 20-21).

The record also showed no special orthopedic condition, except for right knee due to meniscal tear. The ALJ noted there was a gap in the medical treatment for cervical pain from December 2007 as per record of the State Insurance Fund (hereafter "SIF") and the appointment with an internist on May 14, 2008. The gap occurred even though an MRI of

---

[3] "(f) Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (4) of this section, with the physical and mental demands of your past relevant work. See paragraph (h) of this section and §404.1560(b). If you can still do this kind of work, we will find that you are not disabled.
 (g) Your impairment(s) must prevent you from making an adjustment to any other work. (1) If we find that you cannot do your past relevant work because you have a severe impairment(s) (or you do not have any past relevant work), we will consider the same residual functional capacity assessment we made under paragraph (e) of this section, together with your vocational factors (your age, education, and work experience) to determine if you cam make an adjustment to other work..."

the cervical area showed advanced degenerative disc disease at C5-C6 associated with right paracentral and right foraminal disc protrusion resulting in stenosis of right lateral recess and right neural foramen with partial infringement upon the right exiting nerve root. Based on the above summary of medical evidence, the ALJ determined the medical conditions only moderately affected physical and mental capacities but were of such severity to preclude work routine. (*Id.*). Cortés had complaints of bilateral knee pain, lower back and neck pain that radiated to her arms and legs and loss of strength in the arms with constant pain. She also manifested a depressed mood. Still, Cortés had the ability to pay her bills and count change. She also reported to clean the house, do laundry, including line drying, cook meals and go shopping. Although the ALJ stated plaintiff's medically determinable impairments were reasonably expected to cause the alleged symptoms, Cortés' statements as to intensity, persistence and limiting effects were not credible prior to May 1, 2009.

As to the musculoskeletal impairments, the SIF's radiological studies included a lumbar MRI in November 2006 which showed a small disc herniation at L4-L5 producing mild central spinal stenosis and disc bulge at L3-L4 level. A cervical MRI in October 2007 showed advanced degenerative disc disease at C5-C6 level associated with right paracentral and right foraminal disc protrusion resulting in stenosis of the right lateral recess and right neural foramen with partial impingement upon the right exiting nerve root. Plaintiff Cortés underwent two physical therapy sessions under the SIF. The record showed several appointments as of March 6, 2006 through December 11, 2007. The diagnosis referred to cervical myositis. The ALJ noted a gap in the medical evidence after December 2007 until

the patient began treatment with her internist, Dr. Roberto González. (*Id.*, p. 24).⁴ The ALJ also noted that additional electromyography and nerve conduction studies were performed in June 2009 after the established onset date. Still, such studies were made within plaintiff Cortés insured period which expired December 31, 2012.

The record considered by the ALJ further recognized that visits to Dr. Roberto González from May 14, 2008 through February 18, 2009, referred to muscle spasm and muscle weakness, chronic fatigue, impaired sleep and appetite, reduced grip strength, positive straight leg raising and abnormal posture. The diagnosis was of major depression, anxiety, chronic pain syndrome, cervical lumbar disease, degenerative disc disease and insomnia. Dr. González opined the patient had the ability to sit for 15 minutes at one time, stand for 20 but she could sit and stand/walk for at least 6 hours in an 8 hour working day. He also indicated plaintiff did not need to shift positions or need unscheduled breaks or had significant limitations in reaching. Dr. González reported the patient had to include periods of walking during an 8 hour work day. (*Id.*, p. 25).⁵

Plaintiff Cortés had complaints of deep venous insufficiency and the record shows hospitalizations from April 14-23, 2008 at Hospital Buen Samaritano associated with leg thrombosis. She continued thereafter treatment with Dr. Lourdes Mercado, a family practitioner for status/post thrombophlebitis. (*Id.*).

---

⁴ A claimant's failure to follow prescribed treatment on a regular basis contradicts subjective complaints of a disabling condition and supports the ALJ's decision in denying benefits. Tsarelka v. Secretary of Health & Human Servs., 842 F.2d 529, 534 (1st Cir. 1988); Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).

⁵ The ALJ further noted Dr. González also stated plaintiff did not need to shift positions or any unscheduled breaks or had significant limitations reaching. (*Id.*, p. 25; Exhibit 14F).

By August 2008, a consultant neurologist, Dr. Samuel Méndez, found the patient oriented with adequate memory, no motor deficit, normal reflexes, no sensory reflexes abnormality and unassisted antalgic gait with rigid spine. Dr. Méndez reported lumbar and cervical muscle spasms, without muscle atrophy and with decreased strength. There was limited range of motion in the lumbar spine and in the hips and knees. (Docket No. 5, Transcript, pp. 25, 466, and 468-473). The hand functionality presented positive Tinel test results bilaterally, with tenderness and decreased strength, without abnormalities in the range of motion of the wrist, fingers or thumbs. The diagnosis was of chronic lumbalgia and cervicalgia, bilateral carpal tunnel syndrome and diffuse arthralgia. (*Id.*, p. 26). A non-examining source reported on September 27, 2008 plaintiff Cortés had limited ability to handle, finger and feel upon presence of carpal tunnel syndrome. It also indicated Cortés should avoid operation of cutting machinery because of the anti-coagulant medication. It was also confirmed Cortés suffered from cervical/lumbar pain due to osteoarthritis and degenerative discogenic disease causing lumbar spinal stenosis as shown by laboratory findings. (*Id.*).

The ALJ opined Dr. González' findings were inconsistent with the evidence of record and with a treating psychiatrist who diagnosed a major depressive disorder single episode. The medication prescribed was also considered for it was limited to aspirin, a morning diuretic and an anti-coagulant, which were also considered inconsistent with the alleged severity of the symptoms described. The ALJ regarded the opinions of physicians who had no treatment relationship with the patient, such as Dr. Méndez, be afforded greater weight for being consistent with the evidence of record. (*Id.*).

As to the mental condition, the ALJ acknowledged the record documented signs and symptoms of sadness, sleep and appetite disturbances, decreased energy, pervasive loss of interest in all activity, anxious mood, deficiencies of concentration and memory, among others. Still, psychiatric treatment appears during the period of June 2007 through June 2008 with a gap thereafter. (*Id.*). Dr. José Zamora, a psychiatrist, provided a report for June 7, 2008 upon having seen the patient on seven occasions since June 13, 2007. There was anxious, depressed and irritable mood, occasional thought blockages and irrational thoughts, poor memory, frequent distraction with poor concentration. He diagnosed a major depression, single episode. (Docket No. 5, Transcript, p. 27; Docket No. 5, Exhibit 4F, Transcript pp. 456-461).

Dr. Armando Caro conducted a consultative examination in August 2008, which revealed no history of psychiatric hospitalizations, appearing well groomed and oriented in the three spheres, with fair concentration, preserved immediate and recent memory. The diagnosis was of Major Depressive Disorder and Pain Disorder. Another non-examining consultant examined the record of June 13, 2007 through September 17, 2008 and reported Major Depressive Disorder with symptoms of depressed mood, anxiety, psychomotor retardation, easily distracted, but sustaining the capacity to be coherent, logical, with relevant thoughts and oriented. (Docket No. 5, Transcript, pp. 475-477).

The ALJ indicated the opinion of Dr. Caro was afforded greater weight for being consistent by the evidence of record there being no phobias or delusions. The ALJ concluded the medical evidence revealed a well-controlled mental condition. (*Id.*, p. 27). On the above, the ALJ concluded plaintiff Cortés could perform the full range of sedentary

unskilled work which, together with the vocational expert's testimony, the ALJ determined that up to onset date of alleged disability and until April 30, 2009, there were available alternate work such as addresser and document preparer as identified by the vocational expert. (Docket No. 5, Transcript, pp. 22, 28).

The ALJ then proceeded to determine that by the beginning of May 1, 2009 and with the symptoms and limitations alleged by plaintiff Cortés being generally credible, EMG studies of June 2009 showed cervical radiculopathy bilaterally at C6 level and right at C5 level. A nerve conduction of same date study also confirmed moderate bilateral carpal median nerve entrapment. In February 2009 X-rays showed prominent disc space narrowing and spondylosis at C5-C6 level, straightening of the lordosis, periarticular sclerosis of the fact joints and slight anterolisthesis at the C4 level relative to the C5 level. An MRI in June 2009 of the cervical area displayed joint arthrosis at C5/C6 level narrowing the neuro foramina on he right and a broad base disc bulge with indentation of the spinal cord, broad base disc bulge with arthrosis causing mild narrowing of the neuro foramina bilaterally. (*Id.*; Exhibit 17F). There were two treating sources which by September 2009 indicated aggravation of the cervical strain and musculoskeletal abnormalities. By such date, the ALJ gave full credibility for pain complaints as the medical signs and laboratory findings supported the same due to prominent disc space narrowing, sclerosis at the fact joints and narrowing of the neuro-foramina on the right and a broad base disc bulge with indentation of the spinal cord were established for which the patient sought specialized medical treatment and there was no gap in the same. (Docket No. 5, Transcript, p. 29). Because the progress notes of the treating physicians then, Dr. Héctor Vargas, an

orthopedic surgeon, and Dr. Michael Babilonia, a rheumatologist, showed no inconsistencies and their treatment was in accordance with the severity of the symptoms, nature and extent of allegations, these were given controlling weight. (*Id.*, pp. 545-546, 547, 553, 556).

To the contrary, the ALJ noted a treating source previously, Dr. González only prescribed aspirin, a morning diuretic and an anti-coagulant medication, while Dr. Babilonia prescribed Tramadol twice a day to treat moderate to severe pain, muscle relaxant, non-steroidal inflammatory medications, as well as steroids. (*Id.*, p. 29).

Because of such comparison, the ALJ determined that since March 16, 2007 plaintiff Cortés was unable to perform her past relevant work as a machine operator in the electronic industry. As supported by the former medical evidence and credibility assessment, beginning on May 1, 2009, plaintiff Cortés could not perform jobs that existed in significant numbers in the national economy and, thus, was to be considered disabled. (*Id.*, p. 31).

A perusal of the record as a whole shows a very thorough assessment by the ALJ of all the evidence of record and adequate explanations as to the weight given to the medical assessments of the treating and consultative sources. The administrative opinion took significant effort to present each submission, the supportive tests or laboratory findings and their relevance for the administrative determination for the time span covering plaintiff Cortés' insured period and differentiating same. It would become repetitive to discuss the same for which we hereby adopt these explanations as fully supported by the record and under the same scenario raised by plaintiff to limit the discussion as to the hypothetical submitted by the ALJ to the vocational expert.

Plaintiff's memorandum argued that in support of the denial of disability from onset date and up to April 30 2009 the ALJ relied on a vocational expert about the existence of jobs that she could still perform, presenting hypothetical questions to the vocational expert that did not convey all of plaintiff Cortés' limitations. The vocational expert was presented with hypothetical that included ability to perform the full range of sedentary type of work, repetitive simple tasks and no contact with the public with occasional contact with supervisors and co-workers. No mention was made as to manipulative ability as limitations which further eroded the occupational base. As a consequence, the answer given as to the existence of jobs such as addresser and document preparer did not comply with the correct legal standard and by ignoring vital medical evidence the vocational expert's opinion could not be substantial evidence in support of the ALJ's determination. (Docket No. 17, Plaintiff's memo, pp. 20-21).

In the opposition, the Commissioner addressed that argument stating the ALJ did not err by omitting the manipulative limitations. Rather, the ALJ accepted and gave greater weight to the medical evidence that was consistent with the hypothetical in that the pinprick and proprioception were intact in all areas and only mildly decreased in the hands, with normal reflexes in the upper extremities as per Dr. Samuel Méndez' neurological evaluation of August 11, 2008. There was also full range of motion of the hand bilaterally and the patient retained the full ability to grip, grasp, pinch, finger tap, oppose fingers, button a shirt, pick a coin and write bilaterally. The examination did not reveal swelling, sensory changes, tremors, atrophy or deformities in the patient's hands. X-rays confirmed these findings, together with the range of motion chart submitted. (Docket No. 20,

Commissioner's memo, p. 21-22; Docket No. 5, Transcript, pp. 468-70, 474). It was not until June 2009 the nerve conduction study showed moderate bilateral carpal medial nerve entrapment. (Docket No. 5, Transcript, pp. 537, 558). As such, the ALJ not being in agreement with plaintiff's hypothesis as to hand limitations for the period of onset date up through April 30, 2009 did not submit that contention as part of the vocational expert's examination.

Plaintiff's argument that the ALJ should convey the appropriate limitations to the vocational expert to yield relevant responses is correct insofar as to constitute substantial evidence for the ALJ's determination said testimony should accurately reflect all of plaintiff's limitations. Arocho v. Secretary of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). However, in the present case, plaintiff's legal representative submitted the more restricted hypothetical to the vocational expert and received on record the response if hand limitations were further considered. (Docket No. 5, Transcript, pp. 40-43, 44-45). Thus, the record contains the vocational expert's testimony with both hypotheticals. The ALJ ruled he considered supported by the relevant and credible evidence for the record indeed contained contradictions in the medical evidence and these were duly explained through the administrative opinion.[6] After all, although an ALJ is not at liberty to substitute his own views for uncontroverted medical opinions, once there are contradictions in the medical evidence, and having explained same, the ALJ is the one to resolve such conflicts and not the courts. See Rodríguez v. Secretary of Health & Human Servs., 647 F.2d 218 (1st Cir.

---

[6] The present case is thus not one considered as a failure to have relevant responses from the vocational expert's testimony and which omission results in not considered as relevant evidence in support of the ALJ's decision.

1981) (the resolution of conflicts in the evidence is for the Secretary and not for the doctors or the courts).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[7] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

In view of the above discussed, this Magistrate Judge opines the decision of the Commissioner is supported by substantial evidence.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considered whether there was substantial evidence in support of the decision rendered by the Commissioner concludes that the Commissioner's decision is AFFIRMED.

---

[7] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

Nancy Cortés v. Commissioner of S.S.
Opinion and Order
Civil No. 12-1380 (CVR)
Page No. 20

Judgment to be entered accordingly.

In San Juan, Puerto Rico, on this 3rd day of May of 2013.

                                       S/CAMILLE L. VELEZ-RIVE
                                       CAMILLE L. VELEZ RIVE
                                       UNITED   STATES   MAGISTRATE   JUDGE